May it please the Court. Your Honor, this case raises a fairly straightforward question. Did Mr. Scott file a timely motion to intervene in the underlying case that we're on appeal? It can be phrased in different ways. When did he first know his interests were not being represented? Or when was he obligated to take action in a class action? Although it's phrased in different ways, that's the essential question. And you say that time is August 11, 2017, is that? That's correct, Your Honor. Okay, so what did he learn on August 11, 2017 that he didn't find out before? He learned that... For example, on February 24th. He learned that the parties had agreed to resolve on a nationwide class basis the dispute, which would include the claims in Mr. Scott's case. So until that time, he didn't know the parties had negotiated or even come to a resolution of it. All he knew is that a complaint had been filed, a motion to compel arbitration had been filed, and then on August 11 found out that, in fact, that motion wasn't being heard. The parties had reached the settlement. Right, but he knew in November 2015 that there had been a related case filing, and that's, what, a year and nine months before? Correct, Your Honor. It just seems to me that Mr. Scott got outmaneuvered in this case, and that's really not something that the district court was required to intervene on his behalf. I mean, what was the benefit that Mr. Scott would have brought to this case? I've been struggling with that. Once the Moss-Magnuson claim was added to the Bond case, what benefit would Mr. Scott have brought? Sure. Well, there are a few. As an intervener, Mr. Scott would have the role of a party in the case. And as we've... What does that... I'm sorry. What would he have added to the case? Sure. He has the opportunity to... And the motion was filed prior to the drafting of the agreement or the filing for preliminary approval of the class action settlement. The question is what would he add, not what he would derive. What would he add? At that point, he would have had the opportunity to participate in the terms of the agreement or to file a motion or oppose the motion for preliminary approval. Couldn't he opt out of the settlement? Couldn't he ultimately opt out? Ultimately, that's possible, but he represents... Possible? He represents a class. At the fairness hearing, he could opt out or he could object to the terms of the settlement. Could he not? He can opt out for himself. He cannot opt out for the class he represents. No, but if the people that he purportedly represents are concerned, they can opt out. They can. There is this thing moving along. There's a train that's way off down the track, and he's back at the station. The members of the state class can opt out. They won't have the benefit of the knowledge that they were part of a litigation certified class that was being prepared for trial, and that may change the decision whether they would want to take this settlement as opposed to pursuing their fortunes in litigation. That wouldn't become apparent at a fairness hearing? It would not. It would not unless the tens of thousands of members of that class attended the fairness hearing. How would they know that information? The notice did not go out in the case because it was removed a second time to federal court, and it's still pending before Judge Russell. What benefit would Mr. Scott have added to the litigation? You're saying why it might have been good for Mr. Scott. But what benefit would he have added? What would he have brought to the litigation? I haven't heard a thing about what he would have done to enhance the case of the plaintiffs. At the moment that he filed the motion to intervene, he could have participated in the terms that would have been included in the settlement agreement, and that would have changed. It could have changed the agreement. So we're supposed to speculate that it could have changed things? That's not enough. Do you see what I'm saying? We've got to find that the district court abused its discretion. Correct. So don't we have to find that he had something material to add to the plaintiff's case that could not have otherwise been before the court or would not have otherwise been in order for the court to abuse its discretion? I believe so, Your Honor. So beyond that, beyond the negotiations, because I don't know what would have been agreed to. So you're correct. I'm only speculating. So non-speculative. Right. What would he have added to the litigation? He would have an opportunity to take discovery on how this came about. And we set out in our brief the circumstances are at least suspicious. And in all cases where you have a settlement class, where the class has not been certified prior to settlement, the court has a heightened duty to scrutinize how it came about, what was the process. Without an advocate on the other side to take that position, the court is limited in its inquiry. Mr. Scott, if, as an opposing party, would have had the opportunity to take discovery on what occurred between the plaintiff and the defendant, how did this settlement come about? And this is non-speculative because another part of Judge Keenan's question that I'm still awaiting the answer to is what does he bring, not what does he get? What does he add? He brings the opposing view. He brings opposing party who will gather information and present it to the court about how this settlement came about. Opposing the plaintiff? Opposing the plaintiff and defendant's joint effort to bring this settlement in for approval and certification of a class all at the same time. That is, in class action practice, when that occurs, the court, a red flag goes off. I have to determine how these two parties, before there's been contested litigation and a contested certification, how did they come to me with certification and a settlement all at once? The court has that duty to determine. How did they come about this? Was there collusion? It goes to the fairness of the settlement. How did Scott have any more of a basis to intervene in August than he did in February? Because he didn't know the terms of the settlement. So he's going into this blindly, not knowing the terms of the settlement, but just still saying, I bring a benefit. How can you do that? Because, Your Honor, the way the case had been framed from the filing of the amended complaint and the stipulations as to what could or could not be argued, the plaintiff in the Bond case was in a very disadvantageous position, a very disadvantageous position. They could not revisit the prior order that sent them to arbitration on the other claims in the case, despite the fact there had been decisions that an arbitration agreement like the one in this case is unenforceable. But if he didn't know the settlement terms, they could have been getting a windfall, just because the other side wanted to avoid bad publicity. I mean, so it could have been anything. So how can he say that he could have materially added when he doesn't even know what he was adding to? I believe because of the posture of the case, as we've said in our brief, it was that the plaintiff did not have a strong position to negotiate and the odds of getting a windfall out of a poor position are very unlikely. I mean, anything is possible, Your Honor, but in that situation and with that set of circumstances, the odds are that the settlement agreement is going to be less than it could have been with a stronger plaintiff. It's as simple as that. As good as it is, it could have been better, and that is something that a court has to look at, in particular when it determines whether it's fair, adequate, and reasonable. Mr. Scott's entry into the case as a party on intervention gives him an opportunity, far more than just objecting at the fairness hearing, to dig into how the process of the settlement came about and to put that before the court so the court can make its determination that, in fact, this settlement class is appropriate and that the settlements fair, adequate, and reasonable. And without someone taking that position, then the court doesn't have everything that it could have to make the proper determination. Now, as to the idea that Mr. Scott should have intervened at an earlier date, whether it's at the filing of the amended complaint or the original complaint, I mean, there are decisions from, and we've cited to them in this court, in the Third Circuit, in the Seventh Circuit, that because there's a class action, unnamed class members do not have an obligation to make those types of efforts to intervene at early stages because the Supreme Court has said in American Pipe and in the United Airlines versus McDonald case, based on an American Pipe analysis, that you don't have any obligation in a B-3 class until you get notice that the class has been certified. Do you have any case law in this circuit? Well, Your Honor, the case that we rely on is the Hill versus Western Electric case. And the Hill versus Western Electric case was one in which the court – Is that a yes? I mean, it would just help me so much if you would just say, yes, it is, or that this is an out-of-circuit case. Yes, Hill versus Western Electric is the case we rely on from this circuit. Thank you. And in that case, it was a class action, and there were a series of changes in what was required of class representatives during the pendency of that case, which required it to come to this court twice and to the Supreme Court once. But the decision that we've cited to and that we're relying on is the one where the parties who – there was a decision that the class representatives could not represent one of the subclasses because you had to have a member of each subclass representing the subclass. And that's Hill? Hill versus Western Electric. Okay. So after it was determined that party could not represent the subclass, this court's determination the party could not represent the subclass, there was a petition to the Supreme Court. And after the petition was denied, nine months later, three people attempted to intervene in the district court to be representatives of that subclass that couldn't be represented. Right. But in Hill, didn't we say that the most – and this is in the beginning of the discussion – in any event, the most important consideration in passing on an application for intervention is whether the delay has prejudiced the other parties. Yes, that goes with prejudice, Your Honor. Right. And so where do we find prejudice in this case? Well, on – but on timeliness, which is the issue here. Timeliness, the court said that in a class action, the critical issue with respect to timeliness is whether the proposed intervener moved to intervene, quote, as soon as it became clear that the interest of the unnamed class members would no longer be protected by the named class representatives, period, unquote. Right. And that quotes the McDonald case from the Supreme Court. Right. Right. And then on the next page, the court said – That goes back to – Yeah. What benefit do you bring? And it comes back. What – and I didn't mean to cut Judge Duncan off there. It was the same question. Yeah. How is it so that the interests of the class members would no longer be protected by the bond class? Again, Your Honor, because given the posture of the case – How had it changed, I guess, is the question. Yeah. Because Hill talks about as soon as it became clear. Correct. What happened – what definitive happened to make it as soon – that that was as soon as it became clear? Because until that August 11th letter where there was the first indication there had been a settlement that would subsume the claims of the class certified in Scott, nothing that happened in the bond case would have affected Scott. But what would be – what would happen as of August 11th that would make it clear that the interests of unnamed class members would no longer be protected by the named class representatives? Because the certified litigation class with a trial date in the circuit court for Balmer City would be subsumed. It would be taken up and settled without their representatives participating in the settlement. So their – that would not be the same class? What I'm – I don't – I guess maybe it's a variation on Judge Keenan's question. And I can't tell why it suddenly became clear to you that unnamed class members would no longer be – why would they no longer be protected by the named class representatives? Because someone who is not their representative has bargained away their claim. How do we know that if they didn't know the terms of the settlement? Because they – the August 11th letter said to Judge Russell, we've reached a nationwide – a settlement for a nationwide class that will subsume the claims of the Scott case. Unless – yeah, unless – What if they were great terms? Well, they could have been, except – Exactly. So you're just arguing – it seems to me you're just arguing that they bargained for an unknown and therefore it must have been bad. And you have a class action. I mean, the Fourth Circuit's already said that you have to consider the prejudice to the other side. This thing has proceeded through a year and nine months. And your best argument is there could have been something in there that wasn't good. And we were the people, the white knight, who could have come in and unmasked that if there had been a problem. Isn't that your best case? If there had been a problem with the terms of the settlement, we could have forced a closer look at it. Isn't that pretty much what you're saying? May I answer your honor's question? Yes, certainly. It's not exactly what I'm saying, but that is a version of what I'm saying, your honor. But I would just add this. There has been no preliminary approval. No notice has gone out. And under your scenario, then Mr. Scott could wait until there's preliminary approval, if it's granted, and they could move to intervene then because we believe the settlement as it's laid out now is deficient.  So in other words, it was untimely because it was too early, which has been argued by the cricket lawyers. And it's too late, all at the same time. But right now when the notice goes out under virtually every case that's been cited, when Mr. Scott gets it, he would be able to move to intervene and it should be granted. And he would then have all those opportunities. We tried to intervene while the negotiations were taking place so that we could get ahead of it, so that we might be able to participate and might be able to make it a palatable settlement. But that was rejected, and so now Mr. Scott can get his notice, move to intervene, and under the analysis that we've presented as to what he adds to the case and what all the other decisions say is that once a B3 class member gets notice, then he can take action and is obligated to take action to move to intervene. So we could do that, and that will come sometime in the future. I'd like to reserve the rest of my time for rebuttal. Thank you very much. Thank you. Mr. Rothfield. Thank you, Your Honor. I am Charles Rothfield, Mayor Brown, representing the defendant, Cricket Communications. We agree with one thing that Mr. Wolf said at the beginning of his argument, that the one question before the Court concerns the timeliness of Mr. Scott's motion to intervene. And as to that, I think the questions that the Court raised, Judge Keenan's question,  Mr. Scott intervened when he did, go to the heart of the question. He had no particular reason to intervene when he did. He waited too long. If he wanted to be involved in litigation, he should have intervened, sought to intervene much earlier. Mr. Rothfield, would you mind leaning forward a little and speaking into the mic, because I'm having a little bit of trouble hearing you. I'm sorry, Your Honor, certainly. Thank you. The district court found that the motion to intervene was not timely. That decision was correct. It was certainly an abuse of discretion. This Court has said that the purpose of the timeliness requirement under Rule 24 is to prevent a tardy intervener from derailing the litigation just before it reaches the terminal. And that is exactly what Mr. Scott is trying to do here. If you look at the chronology of the litigation, he sought to intervene in late August, as the Court noted, of 2017. By that time he had known about the bond litigation for almost two years, since no later than November of 2015. He had known at the time that cases arose out of an identical set of facts. He knew that bond was brought as a national class action, therefore that his interests could potentially be affected by it. He knew no later than February of 2017 that the bond litigation involved identical legal claims. He knew that the bond litigation was no longer stayed as of that date and, therefore, was proceeding along. So he knew that at any point it could be settled in a way which would affect his interests. Nevertheless, he chose throughout this entire period not to step forward and attempt to intervene, evidently for his own strategic reasons, because he wanted to continue to manage his own litigation against Cricket in Maryland State Court. And as the Court suggested, he made a tactical choice, and that choice did not work out. He only sought to intervene when he learned that Mr. Bond and Cricket had entered into a preliminary settlement, so that the bond litigation was coming to a close. At that point, he stepped in to try to disrupt the settlement. And that is sort of the definition of trying to drive the train off the tracks as it is pulling into the station. What about, he said that you, your side has alternatively argued that he was not only too late, but he was too early. What do you make of that? I think, Judge Thacker, that that's a misunderstanding of what we're saying. We are saying not that he was too early. We're saying that the reason that he gave for intervening when he did, as Judge Keenan pointed out, is not supported by the record. We're saying that the rationale that he gave for why he stepped forward, he says, as Mr. Wolf said, that upon the learning of the settlement, he realized that there might be something amiss, and therefore his interests were adversely affected, and Mr. Bond's counsel were not adequately representing his interests. He could not have known that on the basis of the record because he didn't know what was in the settlement. As Judge Keenan said, it could have been the greatest settlement in the history of the Fourth Circuit. Nevertheless, he stepped forward to intervene at that point. And so that can't be the explanation for why he stepped forward. In fact, the argument that he's making on that point is inconsistent with the theory of the case that he states in his brief to this Court, and as Mr. Wolf said this morning also, he takes the position that the action that Mr. Bond and Cricket took in February of 2017 was collusive when Mr. Bond amended his complaint. If he truly believed that to be true, that would have told him at that point that his interests were adversely affected, could be adversely affected, would have given him reason to step forward at that point to attempt to intervene. But he did not. He waited for a full six months until the settlement was consummated in an attempt to undercut it. And there is simply no legitimate basis for doing that. I mean, this Court has stated a three-part test for when intervention is timely under Rule 24. And as the district court properly found, every element of that test is failed by Mr. Scott's motion. The first element is how far has the underlying case progressed here. There is no doubt the Bond case that progressed essentially to completion. The second element is prejudice to the parties, to the underlying litigation. And here the district court found, as a matter of fact, that allowing intervention would cause substantial prejudice to Mr. Bond and to Cricket. They've been litigating their case for quite some time, spent extensive time negotiating the settlement, completing the settlement. As the district court found, to allow intervention at this late date would cause disruption, expense, delay. And that, as has been noted by the Court, this Court has said is the most important consideration in intervention. Are the parties to the underlying litigation going to be prejudiced? Here the district court found that they would be. And the remaining question is why the late appearance? And as we've been discussing, there has to be a good reason to trigger at least the possibility of a right to intervene. Here there is not. The only explanation offered is that a settlement was consummated. That is not a reason for stepping forward. Does the prejudice inquiry go both ways? In other words, do you look to the prejudice of the parties who have reached the settlement? But can you also look to the prejudice, if any, to the members of the class that Mr. Scott wants to represent? I think not, Your Honor. As part of the timeliness inquiry, as this Court has stated in cases like Alt, one looks to the prejudice of the parties to the underlying litigation. And that is because the question goes to should intervention be permitted? Why is intervention being proposed at this late date? And the question is, is that going to cause prejudice to the parties? Is the delay going to cause prejudice to the parties? So you're saying that prejudice is just a subset of timeliness. It doesn't bleed into the other considerations that the Court addresses in a motion to intervene. That's exactly right. As the Court has stated, the timeliness inquiry is sort of a balancing test that looks to these three considerations. And so, no, one of them is dispositive. Prejudice is a significant one. I think here Mr. Scott fails all three because the case has progressed almost to completion. There is prejudice to the parties, as the District Court has found, and he has offered no plausible explanation for why he waited as late as he did or why he stepped forward when he did. Mr. Wolfe adverted his cases from other circuits, from the Seventh Circuit and the Third Circuit, that state, as he says, sort of a presumption of timeliness when a person who is an absent class member appears within the class opt-out period. This Court has never recognized any such presumption. That was the question that I was getting to, and Mr. Wolfe responded with hill, but that was to a somewhat different point. Right. Well, I think, sure, there are two different sets of cases here. There are the cases from other circuits, which have... Well, the point about it's fine or there's a presumption if the intervention is prior to the close of the opt-out period, and I don't believe there's a Fourth Circuit case on that point. Is that correct? That is exactly right, Your Honor. And even if there were, it's a rebuttable presumption under a specific set of facts. That is also absolutely correct, Your Honor. The only circuit that has adverted to a presumption in this context is the Third Circuit, and as you note, that Court has also said very clearly it is a rebuttable presumption. It can be rebutted by consideration of the totality of the circumstances, and the totality of the circumstances are the three considerations that this Court uses in its test. Right. And as we've said, Mr. Scott fails all three of those. The only remaining points in response to what Mr. Wolf said this morning, the absent class members can object at a fairness hearing as he can. They can choose to opt out of the class if they choose. If there's reason to think that there is something wrong with it, he can raise all the objections that he's raising now. Could they bring another class action, though? I think that was Mr. Wolf's point. I think they could not. Well, if they opt out of the class, if they are within the statute of limitations period, perhaps they could start their own class action, but they would have to opt out of the class to do that. And their interests, I think, are within the context of Rule 23, not Rule 24, are fully taken care of by the fairness process. And so all that I think Mr. Scott would accomplish by seeking to intervene here, if he were to succeed, is to delay and disrupt litigation that has gone forward almost to completion in the bond matter. And that is something this Court has said intervention should not be permitted to do. And the train is kind of being driven off the track as it pulls into the station here, and that is something, as I say, this Court has said repeatedly. Rule 24 is not designed to accomplish. And I think, Your Honor, if there are no further questions. Thank you very much. Great. Thank you, Your Honor. Mr. Zashtel? He shrugged. I don't know how to read that. Are you saying that's close enough? I think it was a mighty effort. It's Zydel. Zydel. May it please the Court, Corey Zydel on behalf of Tim Bonapelli. I did reserve four minutes for argument. I don't have much to add from Mr. Rothfeld's presentation. I just want to direct the Court to the Supreme Court case of NAACP versus New York, which I cited in my brief at 413 U.S. 345. And I really think that case answers the question that's before the Court today, and that is when to count for timeliness. And in that case, the Supreme Court found that there were two dates that it looked to in determining whether an intervention motion was timely. The first one was how long had it been since the applicable complaint was filed and how long was it from the time that the person knew that they weren't being adequately represented if those dates are different. And in that case, the complaint had only been filed four months prior to the intervention motion. And in that case, it had only been two weeks since the person, the third party, who attempted to intervene had actual knowledge that there potentially wasn't adequate representation. And in that case, it's very similar to this case in that in the NAACP case, the issue that the intervener had a problem with for inadequate representation was the failure of the United States to oppose a motion for summary judgment. And that's when they came forward and said, two weeks later, and said, we need to intervene, that's not the proper way to pursue this case. Here, that date would have been in February where Mr. Scott had actual knowledge that either certain arguments were being waived or that the identical claim was being raised in the federal court. So with that, unless the Court has questions, I'll waive the rest of my time. Thank you very much. Thank you. Mr. Wolfe, you have some rebuttal? Yes, I'll be brief. I just wanted to, if I may, get through why I think Hill is an appropriate case. And I've already described that the first appeal came to the Court and it was determined that the class representatives could not represent one of the subclasses, and it went back to the district court. And then there was a petition to the Supreme Court, and that petition was denied nine months later. And at that point, three parties attempted to intervene to represent that subclass. And the argument was raised. Once this Court said you can't represent the subclass because you don't fall into their circumstances, the interveners knew that they had to intervene, and they waited nine months. And this Court said in Hill that we agree that they had no obligation to take any action whatsoever until the time for the disposition of their petition for cert had concluded. So even though they knew, and even though nine months passed, the Court said there are periods of time that you are given, and one of those is for the Supreme Court to determine your petition for cert. In the class action context, there are cases, and we've cited to them, one out of the Third Circuit, and they say that in a class action, in a B3 class action, unnamed class members are not obligated to take action to protect their interests until they get notice that the class has been certified because filing a class action complaint does not create a class. So right now, in the negotiations for the settlement that is in the Bond case, no one is representing the certified class that Mr. Scott represents because the attorney for Mr. Bond doesn't represent him. It doesn't represent those class members. Their rights are being negotiated away. They have a representative, and none of their representatives are taking part in it. And that was the basis. My question, I wasn't challenging Hill as inapplicable. I was just stating my understanding that the presumption of which you speak, that the class action is presumed timely if sought prior to the expiration of the class opt-out period, has, at least as far as I know, only been adopted by the Third Circuit. Well, in those terms, that's correct, Your Honor. But what Hill did, in the section that I read to you from the opinion in my original argument, and I quoted from the Supreme Court case in United Airlines versus McDonald, that part of the McDonald decision where they say that, bear with me, where they say in a class action the critical question is when does it become clear you're not being represented. And then they cite to the American Pipe case in a footnote, and they say, because if we were to require people to intervene before the time for their intervention actually has an effect, like in that case it was before the case finishes and there's a final judgment and the person wants to appeal so they intervene, if we were to make people do this at early stages when complaints are filed, we would violate the principle of American Pipe to avoid all these unnecessary filings at early stages in a class action. We only do that until the class has been certified. And so that is why I believe Hill, and I did not say Hill adopted a presumption, but Hill was in accord with, I'm sorry. No, no, I think it was just a bit of a miscommunication. Right. Hill was in accord with that presumption because it reaches that same conclusion, I believe, under the principles of Hill that American Pipe says in a class action, class members are not required to take any action to protect themselves until it becomes clear their interest is not protected by the parties representing the class. And I think that that's what we have here. It just doesn't say when that is, which is what the Third Circuit has done in drawing a bright line. It didn't. That's right, two cases, before class certification and after class certification. That's what it did is draw that line. The two things I want to add, Your Honor, about what does Mr. Scott bring to the table, number one, he's not bound by the stipulation that Mr. Bond and Cricket entered into that he would not raise all those arguments that could have been raised that weren't raised prior in the litigation. So if he were a party, he could challenge, for instance, the original petition to compel arbitration. He could challenge that this was an adequate settlement. He had all those, and he could take discovery in order to do that. And, of course, my time is up, Your Honor. I apologize. You may finish your sentence. Those arguments had already been waived in the underlying litigation, and given the circumstances of the case, Mr. Scott probably, and I believe we would have, attempted to overturn the whole settlement and to get the case back into a posture for a litigation class to go forward with the litigation. Thank you, Your Honor. Thank you very much. We will come down and greet counsel and proceed directly to the next case.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker